**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No 1:21-cv-171-EGS |
| DEPARTMENT OF THE INTERIOR, et al., | ) ) ) | |
| Federal Defendants. | ) ) | |

**FEDERAL DEFENDANTS' BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

    A.    Glen Canyon National Recreation Area ................................................. 2

    B.    Legal framework for ORV Use on public lands .................................... 3

    C.    Historical ORV management in Glen Canyon NRA ............................. 4

    D.    Glen Canyon ORV Plan and NEPA process ......................................... 4

    E.    NPS promulgates ORV Rule for Glen Canyon NRA .......................... 5

    F.    NPCA's Claims at issue in this Motion ................................................. 7

        1.    Claims 1-3 challenge ORV use at the Play Area ...................... 7

        2.    Claims 7 and 8 concern the potential opening of the Flint Trail .............. 8

        3.    NPCA's standing allegations ................................................... 8

STANDARD OF REVIEW ............................................................................................ 9

ARGUMENT ............................................................................................................... 10

    A.    NPCA's failure to demonstrate standing for its first three claims deprives the Court of subject matter jurisdiction. ........................................... 11

        1.    NPCA has not alleged a cognizable injury to Mr. Nimkin for its first three claims because NPCA has not shown that he will be directly affected by ORV use in the Play Area. ................................... 12

    B.    The Court should dismiss Claim 7 because NPCA has not demonstrated standing and the claim in not ripe. ................................................. 16

        1.    NPCA has not demonstrated an imminent injury related to Claim 7 because the Flint Trail is not currently open and may never open. ........... 16

        2.    Claim 7 is not ripe and should be dismissed. ......................... 17

            a.    Claim 7 is not fit for review. ...................................... 19

            b.    The hardship prong favors deferring judicial review until after NPS conducts a NEPA analysis and the Superintendent decides to open up the Flint Trail. ............................... 19

C.      The Court should dismiss Claim 8 because the claim is not ripe and NPCA
        alleges a procedural violation of NEPA that is unsupported by an actual
        injury...................................................................................................................20

CONCLUSION........................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)...............................................................................................17, 19

*Am. Trucking Ass'ns, Inc. v. Fed. Motor Carrier Safety Admin.*,
724 F.3d 243 (D.C. Cir. 2013) ...............................................................................11

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015)..................................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................10

*Atl. States Legal Found. Inc. v. EPA*,
325 F.3d 281 (D.C. Cir. 2003) ...............................................................................18

*Attias v. Carefirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017) ................................................................................. 9

*Clapper v. Amnesty Int'l*,
568 U.S. 398, 409 (2013) .......................................................................................16

*Clean Air Implementation Project v. EPA*,
150 F.3d 1200 (D.C. Cir. 1998) .............................................................................18

*Ctr. for Biological Diversity v. Bernhardt*,
No. 19-CV-02898, 2020 WL 5702087 (D.D.C. Sept. 24, 2020) ...........................16

*Ctr. for Biological Diversity v. Jackson*,
815 F. Supp. 2d 85 (D.D.C. 2011) .........................................................................10

*Davis v. Fed. Election Comm'n.*,
554 U.S. 724 (2008)..........................................................................................10, 11

*Fed. Forest Res. Coal. v. Vilsack*,
100 F. Supp. 3d 21 (D.D.C. 2015) ..........................................................................12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000).................................................................................. 11, 12, 14

*Gammill v. U.S. Dep't of Educ.*,
989 F. Supp. 2d 118 (D.D.C. 2013) .....................................................................9, 10

*Lujan v. Defs. Of Wildlife*,
504 U.S. 555 (1992)................................................................................................12

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990)....................................................................................14, 18, 19

*Nat. Res. Def. Council v. E.P.A.*,
489 F.3d 1364 (D.C. Cir. 2007) .............................................................................12

*Nat'l Treasury Emps. Union v. Chertoff*,
   452 F.3d 839 (D.C. Cir. 2006) ...........................................................................18

*Nat'l Wildlife Fed'n v. U.S. Army Corps. Of Eng'rs*,
   170 F.Supp.3d 6 (D.D.C. Cir. 2016) ...........................................................12, 13

*Ohio Forestry Ass'n v. Sierra Club*,
   523 U.S. 726 (1998) ..................................................................................17, 20

*Pollack v. U.S. Dept. of Justice*,
   577 F.3d 736 (7th Cir. 2009) .....................................................................14, 15

*Sabre, Inc. v. Dep't of Transp.*,
   429 F.3d 1113 (D.C. Cir. 2005) ........................................................................18

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1974) .........................................................................................16

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .........................................................................10, 16, 21

*Summers v. Earth Island*,
   555 U.S. 488 (2009) .............................................................................12, 16, 21

*Tex. Def. Serv. v. U.S. Dep't of Just.*,
   No. 18-426, 2019 WL 1538250 (D.D.C. Apr. 9, 2019) ......................................18

*Toilet Goods Ass'n v. Gardner*,
   387 U.S. 158 (1967) .........................................................................................18

*WildEarth Guardians v. Jewell*,
   738 F.3d 298 (D.C. Cir. 2013) ..........................................................................21

**Statutes**

16 U.S.C. § 460dd .................................................................................................. 2

54 U.S.C. § 100101 ............................................................................................... 7

**Regulations**

36 C.F.R. § 4.10 ...................................................................................... 4, 5, 8, 19

36 C.F.R. § 7.70 ..............................................................................5, 6, 8, 9, 17

86 Fed. Reg. 3804 (Jan. 15, 2021) ..............................................2, 3, 4, 5, 6, 7, 17

**Other Authorities**

Exec. Order 11644 (Feb. 8, 1972) ....................................................................3, 4

## INTRODUCTION

Congress established the Glen Canyon National Recreation Area ("Glen Canyon NRA" or "Recreation Area") for outdoor recreational purposes and to preserve the unique natural and historic features that contribute to the public enjoyment of the area. The National Park Service ("NPS") manages Glen Canyon NRA, where off-road vehicle ("ORV") use is a popular form of recreation. To continue its management of ORV use in Glen Canyon NRA, NPS recently prepared a new comprehensive management plan to address and manage ORV use at the Recreation Area ("ORV Plan"). NPS then promulgated a special regulation ("ORV Rule" or "Rule") that implements the ORV Plan. The ORV Rule manages the use of motor vehicles on and off roads in Glen Canyon NRA by, among other things, restricting where and how ORVs may operate in order to minimize impacts to resources and conflicts among the many visitors.

Plaintiff National Parks Conservation Association ("NPCA") broadly challenges NPS's decision to allow, and potentially allow, ORV use in certain parts of Glen Canyon NRA under the ORV Rule and ORV Plan, alleging violations of numerous legal authorities. NPCA asserts eight separate claims for relief against Federal Defendants. Federal Defendants respectfully move the Court to dismiss five of the claims at this time.

The first three claims specifically concern ORV use at one specific location within Glen Canyon NRA: the Lone Rock Beach Play Area ("Play Area"). The Play Area is an enclosed 180-acre area in the southwestern corner of Glen Canyon NRA, and represents 0.014 percent of Glen Canyon NRA's total acreage. Although NPCA provides specific allegations as to a member's general use of the Recreation Area to support its standing, it makes no allegation whatsoever that any of its members use, or plan to use, the Play Area. Therefore, NPCA fails on

the face of the Complaint to show any actual injury and fails to allege a basis for standing for its first three claims. They should be dismissed under Rule 12(b)(1).

The Court should also dismiss NPCA's seventh and eighth claims for lack of standing and because they are not ripe. These two claims concern a provision of the ORV Rule that allows the Superintendent of Glen Canyon NRA to *potentially* open up one trail to ORV use. Before that could hypothetically happen, though, NPS is first required to evaluate the impacts of such an action under the National Environmental Policy Act ("NEPA"). Based on the face of the Complaint and the challenged ORV Rule, NPCA fails to show that it will or could suffer an imminent injury from this provision—which has yet to be applied and may never be applied—in order to bring these two claims. For similar reasons, the Court can also dismiss these two claims because they are not ripe.

## BACKGROUND

### A.  Glen Canyon National Recreation Area

Congress established Glen Canyon NRA in 1972 to "provide for the public outdoor recreation use and enjoyment of Lake Powell and lands adjacent thereto in the states of Arizona and Utah and to preserve the scenic, scientific, and historic features contributing to the public enjoyment of the area." 16 U.S.C. § 460dd. The Enabling Act provides that "the Secretary shall administer, protect, and develop the recreation area in accordance" with the NPS Organic Act "and with any other statutory authority available to him for the conservation and management of natural resources." *Id*. at § 460dd-3.

Glen Canyon NRA, located in the heart of the Colorado Plateau, encompasses 1,254,117 acres in Northern Arizona and Southeastern Utah. Glen Canyon National Recreation Area; Motor Vehicles, 86 Fed. Reg. 3804, 3804 (Jan. 15, 2021) (to be codified at 36 C.F.R. Pt. 7).

Navajo Nation lands border the Recreation Area to the south, and other NPS units, such as Grand Canyon National Park, Capitol Reef National Park, and Canyonlands National Park, also border Glen Canyon NRA. *Id.*; *see* Compl. at Ex. A (map of Glen Canyon NRA). Rainbow Bridge National Monument is located within Glen Canyon NRA, and from corner to corner, the Recreation Area spans approximately 200 miles. *See* Compl. at Ex. A.

Thirteen percent of Glen Canyon is covered by Lake Powell, the second-largest human-made lake in the United States. 86 Fed. Reg. at 3804. The Lake stretches 186 miles in various directions, or "fingers," and straddles the Arizona and Utah border. *See* Compl. ¶ 21 and Ex. A. The rest of Glen Canyon NRA is a desert region consisting of, for example, deep canyons, dry washes, arid shrublands, and grasslands. Compl. ¶ 21. Glen Canyon NRA is unique in that it encompasses water and desert environments, which allow for a broad range of recreational opportunities for the public,[1] including ORV use. 86 Fed. Reg. at 3804.

## B.    Legal framework for ORV Use on public lands

In response to the increasing popularity of ORV use on public lands, President Nixon issued Executive Order 11644 in 1972 to "ensure that the use of off-road vehicles on public lands will be controlled and directed so as to protect the resources of those lands, to promote the safety of all users of those lands, and to minimize conflicts among the various uses of those lands." Exec. Order 11644, section 1 (Feb. 8, 1972), amended by Exec. Order 11989 (May 24, 1977), and Exec. Order 12608 (as amended, "Executive Order 11644"). Executive Order 11644 required federal agencies to issue regulations designating areas and trails where ORV use is permitted. *Id.* at § 3(a). It also directs agencies to manage ORV use to minimize impacts to

---

[1] *See* https://www.nps.gov/glca/planyourvisit/things2do.htm (describing recreational activities in Glen Canyon NRA) (last visited March 17, 2021).

resources and wildlife, and to minimize conflicts among visitors. *Id*. at § 3(a)(1)-(3). ORV use is only allowed in the NPS system "if the respective agency head determines that off-road vehicle use in such locations will not adversely affect their natural, aesthetic, or scenic values." *Id*. at § 3(4).

NPS implemented Executive Order 11644, in part, by promulgating 36 C.F.R. § 4.10. Under the regulation, NPS is required to designate by special regulation routes and areas where ORV use is allowed. 36 § C.F.R. 4.10(b). Further, such routes and areas "may be designated only in national recreation areas, national seashores, national lakeshores and national preserves," and ORV use in these NPS units must comply with Executive Order 11644. *Id*.

**C.     Historical ORV management in Glen Canyon NRA**

In 1963, after Lake Powell began to fill behind Glen Canyon Dam, the public started driving off-road near the new Lake for recreational activities in what is now Glen Canyon NRA. 86 Fed. Reg. at 3804. ORV use continued after Congress established Glen Canyon NRA in 1972, and in 1979, NPS prepared a general management plan that designated certain paved and unpaved roads open to vehicular travel and also closed a number of existing unpaved roads in backcountry areas. *Id*. Roads open under the 1979 Plan are referred to as "GMP roads." *Id*. at 3805. NPS adopted additional plans in 1981 and 1988—preceded by impacts analyses under NEPA—that implemented site-specific management for ORV use in Glen Canyon NRA. *Id*. at 3805. One of the areas originally subject to management under the 1981 Plan was the Lone Rock Beach area, located in the southwestern corner of Glen Canyon. *Id*. at 3804-05; *see* Compl. at Ex. A.

**D.     Glen Canyon ORV Plan and NEPA process**

NPS recently—as partial fulfillment of a settlement reached in a prior case with NPCA[2]— embarked on an additional NEPA and ORV planning process. As part of its process to adopt a new management plan for Glen Canyon NRA, NPS prepared an environmental impact statement ("EIS") that thoroughly examined five alternatives and the potential impacts from ORV use for each alternative. 86 Fed. Reg. at 3805. On August 15, 2018, NPS signed a Record of Decision ("ROD") that selected Alternative E; therefore, Alternative E constitutes the current management plan for ORV use in Glen Canyon NRA (ORV Plan) and supersedes all prior management plans. *Id*. The ORV Plan "provides the largest range of experiences for visitors and enhances experiences of different user groups, such as motor vehicle users and those who seek a more primitive camping experience." *Id*. It is "designed to protect resources while enhancing the visitor experience by identifying and designating specific areas capable of ORV use while prohibiting ORV use in areas where resources and values may be at risk." *Id*.

**E.      NPS promulgates ORV Rule for Glen Canyon NRA**

Because NPS decided to allow ORV use in certain areas under the ORV Plan, NPS promulgated the ORV Rule to manage and implement the plan pursuant to 36 C.F.R. § 4.10(b). 86 Fed. Reg. at 3805. NPS published the proposed rule in the Federal Register on February 28, 2018, and accepted comments through April 30, 2018. *Id*. at 3807.

The ORV Rule requires a permit to operate a motor vehicle off GMP roads (those roads established under the 1979 Plan) and at designated locations in Glen Canyon NRA, with a few exceptions. 36 C.F.R. §§ 7.70 (f)(2),(3). In these designated locations the Rule prescribes additional site-specific limitations on use, such as what types of vehicles that are allowed[3], speed

_____

[2] *See* Case No. 1:05-CV-02302-RCL, ECF 112-2, ¶ (C).

[3] The Rule defines "ORV" as "any motor vehicle designed for or capable of cross-country travel on or immediately over natural terrain." 86 Fed. Reg at 3805. This broad

limits, and hours of use to ensure there are quiet times. *Id*. at § 7.70 (f)(3)(ii) (Table 1). Throughout Glen Canyon NRA, motor vehicles must be equipped at all times with noise-suppression devices, and operating a vehicle that emits more than 96 decibels of sound is prohibited. *Id*. at § 7.70(f)(5)(i). Moreover, "[c]reating or sustaining unreasonable noise considering the nature and purpose of the actor's conduct, impact on park users, location, and other factors that would govern the conduct of a reasonably prudent person is prohibited." *Id*. The Superintendent may also suspend or revoke existing permits and deny future permit applications with cause. *Id*. at § 7.70 (f)(6)(iv).

The Rule provides the Superintendent with broad authority to "close or reopen designated areas or routes to motor vehicle use, or impose conditions or restrictions on the use of off-road motor vehicles after taking into consideration public health and safety, natural and cultural resource protection, lake levels, and other management activities and objectives." *Id*. at § 7.70 (f)(6)(i). Along these lines, the Rule specifically provides that the Superintendent, "may determine whether street-legal ATVs or OHVs are allowed on a 15–20 mile section of an unpaved GMP road known as the upper portion of the Flint Trail within the Orange Cliffs Special Management Unit pursuant to paragraph (f)(6) of this section." *Id*. at § 7.70 (f)(4)(ii). The Flint Trail, which is at issue in NPCA's Claims 7 and 8, is currently closed to OHVs and street-legal ATVs, "which is how this trail is currently managed and will continue to be managed by the Superintendent until and unless a different management decision is made." 86 Fed. Reg.

---

definition may include a truck, an all-terrain vehicle ("ATV"), sedan, dirt bike, or any other motor vehicle capable of off-road travel. *Id*. A "conventional motor vehicle" is any motor vehicle designed primarily for streets and highways, and licensed for interstate travel. *Id*. An "OHV" is designed for off-road travel and not licensed for interstate travel. *Id*. ATVs, dirt bikes, and dune buggies are examples of OHVs. A "street-legal ATV" is a type of ATV that can be operated on Utah and Arizona roads. *Id*.

at 3808.  Furthermore, before the Superintendent could feasibly open the Flint Trail, NPS is required to complete a NEPA analysis that examines the potential impacts of opening the Flint Trail.  *Id.*

The Rule took effect February 16, 2021, but the permit requirements do not take effect until April 15, 2021.  86 Fed. Reg. at 3804.

### F.    NPCA's Claims at issue in this Motion

NPCA's complaint asserts eight claims, but only the claims at issue in this motion are described below.[4]

#### 1.    Claims 1-3 challenge ORV use at the Play Area

The first three claims specifically concern ORV use at the Play Area, which the ORV Plan and Rule allow, with certain restrictions.  *See* Compl. ¶¶ 44-68.  The Play Area is located in the southwestern corner of Glen Canyon, near Page, Arizona.  *Id.* at Ex. A.  The Play Area is a fenced-in 180 acre area and it represents only 0.014 percent of Glen Canyon's total acreage of 1,254,117.  86 Fed. Reg. 3804.  Under the ORV Rule, this is the only area in Glen Canyon NRA where ORV use is allowed without a speed limit; it is intended to be a place where the public "can challenge themselves" and develop riding skills. 86 Fed. Reg. at 3804.  Even though there is no speed limit, permits are required to operate in the Play Area, safety flags must be affixed to vehicles, and ORV use is limited to certain hours.  *Id.* at 3804, 3815.

In its first claim, NPCA alleges NPS's adoption of the ORV Plan is unlawful because management of the Play Area under the ORV Plan impairs resources in that area and nearby areas in violation of the Organic Act, 54 U.S.C. § 100101.  Compl. ¶ 45.  NPCA also alleges ORV use at the Play Area violates the Enabling Act.  *Id.* at ¶ 52.  In Claim 2, NPCA alleges NPS

---

[4] Federal Defendants do not concede NPCA has demonstrated standing for Claims 4-6.

used an improper baseline to measure the impacts of ORV use at the Play Area, thus rendering

its impairment analysis under the Organic Act arbitrary and capricious. *Id.* at ¶ 55-58. Finally,

in Claim 3, NPCA alleges NPS acted contrary to 36 C.F.R. § 4.10 and Executive Order 11644 in

authorizing continued ORV use at the Play Area. *Id.* at ¶ 68.

### 2. Claims 7 and 8 concern the potential opening of the Flint Trail

**Claim 7**: The ORV Rule provides that the Superintendent has the authority to potentially

open up the Flint Trail—an unpaved 15-20 mile section in Orange Cliffs—to street-legal ATVs

or OHVs. 36 C.F.R. § 7.70(f)(4)(ii). NPCA claims this delegation of authority to the

Superintendent—to potentially open up the Flint Trail—violates the APA because it is contrary

to 36 C.F.R. § 4.10. Compl. ¶ 109.

**Claim 8**: The claim also concerns the Flint Trail provision in the ORV Rule. NPCA

alleges NPS violated the APA and NEPA by not preparing a supplemental EIS that examines the

impacts of potentially opening up the Flint Trail. *See* Compl. ¶¶ 111-115.

### 3. NPCA's standing allegations

NPCA does not allege that it has standing to sue on its own behalf, but asserts

associational standing based on alleged injury to one of its members, David Nimkin, a resident of

Salt Lake City, Utah. *Id.* at ¶¶ 41-42. NPCA specifically alleges that:

> Mr. Nimkin loves the outdoors, particularly Glen Canyon NRA and the adjacent part of
> Canyonlands National Park, which he can access only through the NRA, including its
> Orange Cliffs area. In both parks, he enjoys hiking, camping, and seeing and
> photographing cultural objects, natural rock formations, and wildlife, among other things.
> He particularly enjoys the clear night skis and the solitude of the remote areas of the
> parks. He has enjoyed Glen Canyon NRA in these manners by visits there in the past for
> his personal enjoyment, and he plans to do so again in the Fall or early Winter of 2021.
> NPS's ORV Plan challenged here will permit the use of ORVs in and near such remote
> areas where he plans to visit, among other places of concern to him.

*Id.* at ¶ 42.  NPCA further alleges that ORV use in the remote areas he plans to visit will "degrade and interfere with his ability to enjoy these areas by, among other things, causing loud noises and by throwing up dust, which will clog the otherwise pristine quality of the air and which will block the otherwise clear dark nights when he enjoys star gazing." *Id.*  Finally, NPCA alleges that a "favorable decision for NPCA here, which would vacate the ORV Plan and 36 C.F.R. § 7.70(f), would mean that ORVs would not be allowed in Glen Canyon thereunder, which would redress Mr. Nimkin's injuries." *Id.*

NPCA also alleges that Mr. Nimkin will be procedurally harmed by the ORV Rule—specifically, the Rule's designation of authority to the Superintendent to potentially open up the Flint Trail to ORV use. *Id.* at ¶ 43.  This designation "deprives Mr. Nimkin of his rights under NEPA and the APA in connection with such consideration and action." *Id.*

Nowhere does NPCA allege that Mr. Nimkin has visited, or intends to visit, the Play area or anywhere near the Play Area.  The only specifically-named area of Glen Canyon NRA he allegedly plans to visit is Orange Cliffs, which is adjacent to Canyonlands on the far northeastern corner of Glen Canyon. *Id.* at ¶ 42.  Orange Cliffs is over 100 miles from the Play Area. *Id.* at Ex. A.

## STANDARD OF REVIEW

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *Gammill v. U.S. Dep't of Educ.*, 989 F. Supp. 2d 118, 120 (D.D.C. 2013).  Although the Court must treat all well-pleaded factual allegations as true, the Court need not "assume the truth of legal conclusions [or] accept inferences that are unsupported by the facts set out in the complaint." *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017) (citation and quotation omitted).  The court "must give

the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim" because "subject matter jurisdiction focuses on the court's power to hear the claim." *Gammill,* 989 F. Supp. 2d. at 120 (internal citations omitted).

Moreover, where, as here, a case is at the pleading stage, the plaintiff "must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations and internal quotation marks omitted); *Davis v. Fed. Election Comm'n*., 554 U.S. 724, 734 (2008) (A plaintiff must demonstrate standing for each claim and request for relief.) A court may consider materials outside the pleadings in order to resolve the question of its jurisdiction. *Ctr. for Biological Diversity v. Jackson*, 815 F. Supp. 2d 85, 90 (D.D.C. 2011). The Court should dismiss a complaint under Rule 12(b)(1) where the plaintiff can prove no set of facts demonstrating subject matter jurisdiction. *See id.* at 89-90; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice.").

## ARGUMENT

The Court should dismiss NPCA's Claims 1, 2, 3, 7, and 8 because NPCA has not established that the Court has subject matter jurisdiction to adjudicate these claims. The first three claims specifically concern ORV use at the Play Area, which is authorized under the ORV Plan and Rule. But NPCA provides no allegations that any of its members use the Play Area. Indeed, it relies solely on allegations related to use by one member, Mr. Nimkin, but NPCA's general allegations of his use of the Recreation Area provide no indication that he has ever visited, or intends to visit, the Play Area. Therefore, NPCA has not alleged a concrete, particularized, and imminent injury for its first three claims.

10

Similarly, the Court should also dismiss NPCA's Claims 7 and 8 for lack of standing and because they are not ripe.  These two claims concern the Flint Trail provision of the ORV Rule, which provides the Superintendent of Glen Canyon NRA with the authority to open this trail to ORV use—but only after undertaking a NEPA analysis.  NPCA cannot suffer an imminent injury related to the Flint Trail provision because NPS has not yet applied this provision and NPCA alleges no facts in the Complaint to show that such an application is impending or even threatened.  As such, NPCA has not demonstrated an injury and standing.  For similar reasons, the Court can also dismiss the two claims because they are not ripe.

**A.     NPCA's failure to demonstrate standing for its first three claims deprives the Court of subject matter jurisdiction.**

A plaintiff must establish standing separately for each claim that it asserts.  *Davis v. Fed. Election Comm'n*., 554 U.S. at 734.  Here, NPCA fails to allege facts that would support its standing to litigate its first three claims, and they should be dismissed.

NPCA expressly asserts standing "as a representative of its members."  Compl. ¶ 41.  To demonstrate such associational standing, it must demonstrate that "(1) at least one of its members would have standing to sue in his own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit."  *Am. Trucking Ass'ns, Inc. v. Fed. Motor Carrier Safety Admin.*, 724 F.3d 243, 247 (D.C. Cir. 2013) (citation omitted).  Under the first element, the plaintiff organization must show, for at least one individual member: (1) "an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

**1.     NPCA has not alleged a cognizable injury to Mr. Nimkin for its first three claims because NPCA has not shown that he will be directly affected by ORV use in the Play Area.**

NPCA's assertion of associational standing falls on the first element.  Specifically, NPCA fails to allege facts that any specific member will suffer an imminent, concrete, and particularized injury from ORV use at the Play Area.

An individual can adequately allege injury if they are a person "for whom the aesthetic and recreational values of the area will be lessened" by the challenged activity. *Nat. Res. Def. Council v. E.P.A.,* 489 F.3d 1364, 1370 (D.C. Cir. 2007) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc*., 528 U.S. at 183 (emphasis added).  But to show such injury, one's aesthetic and recreational interests must be "directly affected by the agency action." *Nat'l Wildlife Fed'n v. U.S. Army Corps. Of Eng'rs*, 170 F.Supp.3d 6, 12 (D.D.C. Cir. 2016) (*citing Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 563 (1992)); *see also Fed. Forest Res. Coal. v. Vilsack*, 100 F. Supp. 3d 21, 43 (D.D.C. 2015) ("[P]laintiffs can demonstrate standing only if application of the regulations by the Government will affect *them* in the manner described in the complaint." (internal quotation marks and brackets omitted)).  In order to be directly affected by the agency action, the member of the organization must actually use the area affected by the agency action. *Nat'l Wildlife Fed'n*, 170 F. Supp. 3d at 12; *see also Summers v. Earth Island*, 555 U.S. 488, 499 (2009) (To establish standing "plaintiffs must show that they use the area affected by the challenged activity and not an area roughly in the vicinity of a project site . . . .") (citation omitted); *Nat. Res. Def. Council,* 489 F.3d at 1370 (to establish injury, the person must still "aver that *they use the affected* area.") (emphasis added).  Article III standing is "not injury to the environment but injury to the plaintiff." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc*., 528 U.S. at 181.

12

NPCA's first three claims allege violations specifically with respect to ORV use at the Play Area.  Compl. ¶¶ 45-52, 55-57, 65-68.  However, NPCA fails to provide any allegations that any of its members will be "directly affected" by the challenged actions because it fails to establish that any of its members actually use the Play Area.  *See Nat'l Wildlife Fed'n*, 170 F. Supp. 3d at 12.  NPCA only identifies a single member to support its standing, Mr. Nimkin. Compl. ¶¶ 41-43.  However, Mr. Nimkin does not live near the Play Area; he lives in Salt Lake City.  *Id.* at ¶ 42.  Nor does NPCA allege that Mr. Nimkin has ever visited the Play Area, or that he intends to do so in the future.  *Id.*  NPCA only alleges that he may visit the Orange Cliffs area of Glen Canyon NRA, which is adjacent to Canyonlands National Park and over 100 miles from the Play Area.  *Id.*; *see* Compl. at Ex. A.  Because has no plans to visit the Play Area, he cannot be directly affected by ORV use from that area.  And there can be no injury.

NPCA also makes broad, generic allegations regarding Mr. Nimkin's recreational activities—which may potentially occur at Canyonlands National Park or Glen Canyon NRA. *See* Compl. ¶ 42 (alleging that he "loves the outdoors, particularly Glen Canyon NRA and the adjacent part of Canyonlands National Park, which he can access only through the NRA, including its Orange Cliffs area"); *id.* (alleging that in "*both* parks, he enjoys hiking, camping, and seeing and photographing cultural objects, natural rock formations, and wildlife, among other things") (emphasis added); *id.* (alleging that he also "enjoys the clear night skies and the solitude of the remote areas of the *parks*.") (emphasis added).  Furthermore, while NPCA alleges that he has visited the Recreation Area in the past, it alleges no specifics, as to time or specific location, except that he has visited Orange Cliffs.  *Id.*  And with respect to the future, Mr. Nimkin plans to visit "in the Fall or early Winter of 2021," but NPCA only alleges that he plans to visit unspecified "remote areas" of Canyonlands and Glen Canyon NRA.  *Id.*

Such allegations of "use of unspecified portions of an immense tract of territory" are insufficient to demonstrate an imminent, concrete, and particularized injury for NPCA's first three claims. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Indeed, the facts in *Lujan* are on point. There, an environmental organization challenged a governmental action that opened public lands for mining. A member of the plaintiff organization claimed she would be injured because she used areas "in the vicinity of" the government action. *Id*. at 886. However, the Court found that such claimed use of "unspecified portions of an immense tract of territory, on some portions of which mining activity has occurred or probably will occur by virtue of the governmental action" was insufficient to show that the member's interests were actually affected. *Id*. at 889. So too here. NPCA's allegations of Mr. Nimkin's use of unspecified "remote areas" within Glen Canyon, which is an immense tract of land totaling 1,254,117 acres, cannot demonstrate that Mr. Nimkin will be actually affected by the actions challenged in Claims 1-3. *See id.; Compare Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167 (finding injury-in-fact where plaintiffs' members had previously used a specific river area, but because of the pollution giving rise to their claims, stopped visiting the area).

Moreover, the only discrete areas that NPCA alleges Mr. Nimkin uses are *not* in the vicinity of the Play Area. For instance, the only specifically-identified area of Glen Canyon NRA that he may use is the Orange Cliffs area. Compl. ¶ 42. While NPCA also alleges his use of the adjoining Canyonlands National Park, that location is even farther away from the Play Area. *Id*.; *see* Compl. at Ex. A. A similar scenario was at issue in *Pollack v. U.S. Dept. of Justice*, 577 F.3d 736 (7th Cir. 2009). There, plaintiffs alleged that the discharge of bullets at a gun range on the shores of Lake Michigan violated certain environmental laws. *Id*. at 737-38. An organization asserted standing based on the impact to one of its member's activities including

birdwatching in the "Great Lakes watershed" and visiting public parks "along the Illinois portion of Lake Michigan." *Id.* at 742. However, the court found this insufficient to establish his standing, noting that the section of Lake Michigan bordering Illinois stretches for approximately 70 miles, and that the member never specified where along the shoreline he visits. *Id.* at 743. The member also alleged injury due to concerns that his drinking water—obtained from a different part of the lake than the location of the alleged pollution—might become contaminated. The Seventh Circuit rejected this claim as well, noting that *Lujan v. Nat'l Wildlife Fed'n* "makes clear that when a vast environmental area is involved and the pollution affects one discrete area while a plaintiff intends to visit a different discrete area, that plaintiff does not have standing." *Id.* at 742.

*Pollack* is on all fours with this case. The actions challenged in Claims 1-3 affect a discrete area, the Play Area, yet the Complaint alleges Mr. Nikim "intends to visit a different discrete area." *Pollack*, 577 F. 3d at 742; *see* Compl. ¶ 42. Under such circumstances, Mr. Nimkin (and thus NPCA) does not have standing to bring these three claims. *See Pollack*, 577 F. 3d at 742.

For similar reasons, NPCA also fails to allege facts that could show Mr. Nimkin's claimed injury is fairly traceable to ORV use in the Play Area. The Complaint does not allege that noise from the Play Area could travel over 100 miles and affect his recreational interests in Orange Cliffs, or that dust from ORV use in the Play Area could affect his ability to stargaze in this area or other unspecified "remote areas" in Glen Canyon NRA and Canyonlands. Nor would any such allegations be plausible. *See Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) (to establish standing premised on future injury, Plaintiff "must demonstrate a realistic danger of sustaining a direct injury.") (citation omitted).

Accordingly, the Court should dismiss NPCA's first three claims because NPCA has not established standing and this Court lacks subject matter jurisdiction to decide these claims.

**B.**     **The Court should dismiss Claim 7 because NPCA has not demonstrated standing and the claim in not ripe.**

    **1.**     **NPCA has not demonstrated an imminent injury related to Claim 7 because the Flint Trail is not currently open and may never open.**

NPCA alleges that the Flint Trail provision in the ORV Rule, which allows the Superintendent to potentially open up the Flint Trail to street-legal ATVs or OHVs, is unlawful. Compl. ¶ 109. On its face, however, this provision precludes NPCA from satisfying the imminence requirement for an injury in fact because the Flint Trail was closed when NPCA filed its Complaint and the trail may never open. Further, NPCA fails to allege any facts that show NPS has taken any steps toward opening the trail that could feasibly demonstrate a concrete, particularized injury to Mr. Nimkin is threatened or impending.  Thus, NPCA fails to satisfy the actual injury requirement that is necessary for standing.

To meet the imminence requirement for an injury in fact, a "threatened injury must be *certainly impending*"; allegations of "*possible* future injury are not sufficient." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013). These requirements ensure that the alleged injury is not too speculative for Article III purposes and "that 'there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.'" *Summers*, 555 U.S. at 493 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974)).  That threat of "'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc.*, 136 S. Ct. at 1548; *see also Ctr. for Biological Diversity v. Bernhardt*, No. 19-CV-02898, 2020 WL 5702087 (D.D.C. Sept. 24, 2020) (finding policy allowing agency to use particular pesticides did not cause actual or imminent injury absent actual decision to use pesticide in a

specific location).

When applying these bedrock standing principles to Claim 7, NPCA has not satisfied the imminence requirement because NPCA is challenging a provision of the ORV Rule that, on its face, has not been applied and may never be applied. *See* 36 C.F.R. § 7.70(f)(4)(ii); 86 Fed. Reg. at 3808. Consequently, the potential injuries NPCA alleges for Mr. Nimkin do not exist; they are entirely hypothetical. Moreover, before the Superintendent could even feasibly open up the Flint Trail, NPS is required to examine the potential impacts of such an action under NEPA. 86 Fed. Reg. at 3808. Following such analysis, NPS could decide to *not* open up the Flint Trail, or to open it with additional limitations (which the Superintendent may impose under 36 C.F.R. § 7.70(f)(6)) that might eliminate or mitigate any potential injury to Mr. Nimkin. This NEPA perquisite to potentially opening up the Flint Trail further reinforces that there is no threatened or impending injury and Claim 7 should be dismissed.

### 2.      Claim 7 is not ripe and should be dismissed.

For similar reasons, Claim 7 is not ripe. The claim is not fit for review because NPS has not applied the Flint Trail provision and NPCA will not be harmed if the Court withholds review of this claim.

The ripeness requirement prevent the courts, "through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). To determine whether administrative action is ripe for judicial review under the APA, courts evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding review. *Id.* at 149; *see Ohio Forestry Ass'n v.*

*Sierra Club*, 523 U.S. 726, 733 (1998). Where—as here—the challenged agency action is

adoption of a regulation, courts presume the challenge is not ripe. As the Supreme Court

explained in *Lujan v. Nat'l Wildlife Fed'n*,

> Absent a [pre-enforcement review] provision, however, a regulation is not
> ordinarily considered the type of agency action 'ripe' for judicial review under
> the APA until the scope of the controversy has been reduced to more manageable
> proportions, and its factual components fleshed out, by some concrete action
> applying the regulation to the claimant's situation in a fashion that harms or
> threatens to harm him.

497 U.S. at 891.

To be sure, courts in the D.C. Circuit have occasionally described facial challenges to

regulations as "presumptively reviewable" where the challenge brings a "purely legal" claim.

*See, e.g., Sabre, Inc. v. Dep't of Transp.*, 429 F.3d 1113, 1119 (D.C. Cir. 2005). However,

courts must ask, even if the issue "is purely legal, whether consideration of the issue would

benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Atl.*

*States Legal Found. Inc. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) (quoting *Clean Air*

*Implementation Project v. EPA*, 150 F.3d 1200, 1204 (D.C. Cir. 1998)). The legal nature of an

issue is thus not the sole determinant of fitness for review, and "even purely legal issues may be

unfit for review." *Atl. States Legal Found.*, 325 F.3d at 284; *see also Nat'l Treasury Emps.*

*Union v. Chertoff*, 452 F.3d 839, 855 (D.C. Cir. 2006) (holding challenge to provisions of rule

not ripe because, although they "present a purely legal question, it is a question that will 'stand

on a much surer footing in the context of a specific application of [the] regulation.'" (quoting

*Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967)); *see also Tex. Def. Serv. v. U.S. Dep't*

*of Just.,* No. 18-426, 2019 WL 1538250, at *10 (D.D.C. Apr. 9, 2019) (holding challenge to

regulation unripe even for claims that were purely legal because the regulations had not been

"felt in a concrete way by the challenging parties, therefore making judicial review premature"

(citation and internal quotation marks omitted)).  As set forth below, these principles dictate that NPCA's facial challenge to the ORV Rule is not ripe.

> ### a.   Claim 7 is not fit for review.

Under the first prong of the *Abbott Labs* test—as applied by the Supreme Court in *Lujan v. Nat'l Wildlife Fed'n*,—a challenge to a regulation is presumed not to be fit for review until the regulation has been applied in a manner that harms plaintiff.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 891.  As discussed above, that has not happened here because NPS has not applied the Flint Trail provision.  The only exceptions to this presumption against pre-application review of regulations are where there is a special review statute permitting the regulation "to be the object of judicial review directly" or where the regulation is a substantive rule requiring plaintiff to immediately adjust its primary conduct under threat of serious penalties.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 891.  Neither of these two exceptions apply.  First, 36 C.F.R. § 4.10 does not contain any specialized review procedure that would allow for a direct challenge to the ORV Rule.  Second, the Flint Trail provision challenged in Claim 7 does not pose an immediate threat to NPCA or its members because the provision is not in effect and may never be applied.  The ORV Rule does not threaten any penalties, either.

> ### b.   The hardship prong favors deferring judicial review until after NPS conducts a NEPA analysis and the Superintendent decides to open up the Flint Trail.

In addition to the fitness of an issue for judicial review, courts must consider the relative "hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149.  This factor also weighs in favor of concluding that NPCA's facial challenge to the Flint Trail provision is not ripe.  As noted above, NPCA faces no hardship from waiting to pursue its Claim 7 until the hypothetical time when that Flint Trail is actually open, and NPCA alleges an actual

injury from ORV use on the trail.  While it might be "easier, and certainly cheaper, to mount one legal challenge against the [Rule] now, than to pursue many challenges to each site-specific [] decision to which the Rule might eventually lead . . . [t]he case-by-case approach is the traditional, and remains the normal, mode of operation of the courts." *Ohio Forestry,* 523 U.S. at 734-35 (internal quotation marks, ellipses and citations omitted).  Furthermore, NPS is required to prepare a NEPA analysis before it could open up the Flint Trail, and such NEPA analysis could result in conditions or restrictions limiting any potential injury to NPCA.

Under these circumstances, where NPCA faces no immediate injury from the Flint Trail provision—and indeed, it may never, if the provision is never invoked—the balance of hardships clearly favors deferring judicial review.  The Court can also dismiss Claim 7 because it is not ripe.

**C.     The Court should dismiss Claim 8 because the claim is not ripe and NPCA alleges a procedural violation of NEPA that is unsupported by an actual injury.**

In Claim 8, NPCA alleges NPS violated NEPA because the Flint Trail provision "contradicts NEPA and CEQ's regulations thereunder by permitting a substantial change in the proposed action having environmental concerns without preparing a supplemental [EIS]." Compl. ¶ 115.  NPCA claims "[t]he opening of the Flint Trail to ORVs was not part of the decision made by NPS in its ROD, nor was it evaluated in the DEIS or FEIS as an alternate separate from the opening of all roads to ORV use." *Id*. at ¶ 111.  But NPCA has not demonstrated standing to bring this claim for the same reasons it does not have standing to bring Claim 7: NPCA can assert no imminent injury from ORV use on the Flint Trail because the ORV Rule on its face does not authorize ORV use on the Flint Trail.  Any future ORV use on the Flint Trail is purely hypothetical at this point.  Moreover, NPCA cannot claim any injury under NEPA

because, before any decision to open the trail occurs, NPS must undertake a NEPA analysis evaluating such decision.

According to the Supreme Court, "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. 488, 496 (2009); *see also WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013) ("a procedural injury claim therefore must be tethered to some concrete interest adversely affected by the procedural deprivation."). In *Summers*, because the respondents failed to challenge a concrete application of the regulations at issue, the Supreme Court found that the alleged procedural violation was not justiciable. *Summers*, 555 U.S. at 497. NPCA's alleged procedural injury claims here (*see* Compl. ¶¶ 43, 115) suffer the same fatal flaw. Until the Flint Trail is actually opened, NPCA asserts only a "procedural right *in vacuo*." *Summers*, 555 U.S. at 496; *see also Spokeo, Inc.*, 136 S. Ct. at 1549 ("a bare procedural violation, divorced from any concrete harm," cannot satisfy the injury-in-fact requirement).

The Court can also dismiss Claim 8 as not ripe for review, for many of the same reasons described above for Claim 7. NPCA alleges a NEPA violation because NPS allegedly failed to examine the impacts of the Flint Trail provision in its EIS and did not submit a supplemental EIS. *See* Compl. ¶ 115. But NPCA puts the cart before the horse. The Federal Register provides that NPS must examine the impacts of potentially opening the Flint Trail under NEPA before it can actually do so. 86 Fed. Reg. at 3808. Assuming that any such decision is made in the future, that will be the proper time for NPCA to raise any challenge under NEPA. NPCA suffers no hardship waiting until this time because there is no harm to NPCA's members in the meantime—

21

the Flint Trail is currently closed and will be managed that way for the foreseeable future. *Id*.

The Court should dismiss NPCA's premature Claim 8 because it is not ripe.

## CONCLUSION

For the foregoing reasons, the Court should dismiss NPCA's Claims 1-3 and 7-8 under Rule 12(b)(1).

Respectfully submitted this 29th day of March, 2021.

JEAN E. WILLIAMS
Acting Assistant Attorney General

*/s/ Jeffrey N. Candrian*
JEFFREY N. CANDRIAN
Colo. State Bar No. 43839
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1382
E-mail: jeffrey.candrian@usdoj.gov

MARK J. WIDERSCHEIN
Ohio State Bar No. 100162
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
150 M St. NE
Washington, D.C.
Tel: (202) 532-5803
E-mail: mark.widerschein@usdoj.gov

22

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2021, I electronically filed the foregoing FEDERAL DEFENDANTS' BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which will send notification of this filing to all counsel of record.

/s/ *Jeffrey N. Candrian*
JEFFREY N. CANDRIAN
U.S. Department of Justice