# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, <br><br>     Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, <br><br>     Defendants. | Civil Action No. 1:21-cv-00171 (ACR) |
| SOUTHERN UTAH WILDERNESS ALLIANCE, <br><br>     Plaintiff, <br><br> v. <br><br> NATIONAL PARK SERVICE, *et al.*, <br><br>     Defendants. | Civil Action No. 1:23-cv-00693 (ACR) |

**SETTLEMENT AGREEMENT**

This settlement agreement ("Settlement Agreement") is entered into by and between Plaintiffs Southern Utah Wilderness Alliance ("SUWA") and National Parks Conservation Association ("NPCA"), and Defendants Department of the Interior, et. al (Case No. 1:21-cv-00171) and National Park Service ("NPS"), et al. (Case No. 1:23-cv-00693) (collectively, the "Parties").  The Parties, by and through their undersigned counsel, state as follows:

WIIEREAS, on September 7, 2018, NPS approved an Amended Record of Decision ("ROD") that adopted the selected alternative in the final Glen Canyon National Recreation Area

Off-Road Vehicle Management Plan/Environmental Impact Statement.  Attached to the ROD, NPS issued a Non-Impairment Determination for the selected alternative in the Environmental Impact Statement;

WHEREAS, on January 15, 2021, NPS issued a final rule ("2021 Rule") that authorizes Off-Road Vehicle ("ORV") use in portions of Glen Canyon National Recreation Area ("Glen Canyon").  36 C.F.R. §§ 7.70(f)(1)-(6).  The 2021 Rule took effect February 16, 2021, except for two provisions that took effect April 15, 2021.  86 Fed. Reg. at 3804;

WHEREAS, NPCA filed a complaint in Case No. 1:21-cv-00171 on January 19, 2021 and filed an amended complaint on April 16, 2021.  SUWA filed a complaint in Case No. 1:23-cv-00693 on March 15, 2023 and filed an amended complaint on August 7, 2023.  Plaintiffs challenge, among other things, the 2021 Rule and allege that Defendants violated certain legal authorities;

WHEREAS, Defendants deny any violations of law;

WHEREAS, on June 26, 2023, the Court consolidated Case Nos. 1:21-cv-00171 and Case No. 1:23-cv-00693;

WHEREAS, the Parties, through their authorized representatives, in an effort to conserve the resources of the Parties and the Court, and without any admission or adjudication of the issues of fact or law, have reached an agreement to resolve this litigation in accordance with the terms set forth in this Settlement Agreement.

NOW, THEREFORE, the Parties hereby agree as follows:

1.      NPS will initiate a new rulemaking that proposes revisions to the 2021 Rule.  The new rule will be called the "Revised Rule."

        A.      In the Notice of Proposed Rulemaking ("NPRM"), NPS will propose to:

i.      Prohibit the use of OHVs and street-legal ATVs on the
        approximately 8-mile segment of Poison Springs Loop, located
        within the Orange Cliffs Special Management Unit.[1]

ii.     Eliminate reference to the Superintendent's ability to potentially
        designate the Flint Trail for OHV or street-legal ATV use, as
        permitted under the 2021 Rule. *See* 36 C.F.R. § 7.70(4)(ii).

iii.    Add a new requirement for the following eleven (11) Shoreline
        Access Areas ("SAAs"): Blue Notch, Dirty Devil, Farley Canyon,
        Stanton Creek, Bullfrog North, Bullfrog South, Crosby Canyon,
        Red Canyon, White Canyon, Hite Boat Ramp, and Lone Rock
        Beach.  For these SAAs, and using United States Geologic Survey
        and Bureau of Reclamation hydrologic data, the Revised Rule
        would require the Superintendent to determine a lake elevation
        level upon which each SAA would be "open" or "closed" to
        motorized vehicle access.  NPS will publish such lake elevation
        levels in the Superintendent's Compendium and on the website for
        the Recreation Area. Such lake elevation levels may change based
        upon public health and safety, natural and cultural resource
        protection, and other management activities and objectives.  NPS
        will have 14 days after the triggering lake elevation is reached to
        make the required management action to open or close the SAA
        and notice that change as required by their regulations.  NPS will
        include these determinations on the website for the Recreation
        Area.  Within 14 days of providing notice of the change, NPS will
        install signs at each of the respective SAAs, informing the public
        that the SAA is open or closed. If an SAA is closed, NPS may take
        additional steps besides signing the closure, such as the installation
        of gates.  If an SAA is closed, and if there is a GMP road[2] within
        that SAA, motor vehicle access on the GMP road may still be
        allowed at the discretion of the Superintendent.

        a.      With regard to a lake elevation change that requires
                management action to open or close an SAA, as described
                in Paragraph 1(A)(iii), the water levels must be above
                or below the published lake elevation for seven (7)
                continuous days to trigger the management action
                described in the prior paragraph.

iv.     Retain discretion to close or restrict motor vehicle use in SAAs if
        necessary to protect resources and visitors, regardless of lake
        elevation.  The NPS would publish any closures or restrictions in

---

[1] "Orange Cliffs Special Management Unit" is defined in 36 C.F.R. § 7.70(f)(1).
[2] "GMP road" is defined in 36 C.F.R. § 7.70(f)(1).

3

the Superintendent's Compendium and on the website for the Recreation Area.

v.   Clarify that ORV use in SAAs, unlike ORV use in the Lone Rock Beach Play Area,[3] must be for the purpose of traveling from a GMP road to the shoreline, and back.

vi.   Prohibit OHV and street-legal ATV use on the following GMP roads in the Recreation & Resource Utilization Zone, as defined in the 1979 General Management Plan for Glen Canyon:[4]

a.   Unnamed road near Dry Mesa/Sheep's Canyon (near Hite, sometimes referred to as Dry Mesa Road).
• approximately 4.31 miles

b.   Road #2/95 Spur (near Hite, also known as Dirty Devil Spur)
• approximately 1.14 miles

c.   Cove Canyon Spur Road (near Hite)
• approximately 0.65 miles

d.   Flint Trail Spur Road (near Hite, also known as Waterhole Flat Spur #1 Road & Dark Canyon Overlook Road)
• approximately 0.72 miles

e.   Ticaboo Mesa Road (near Bullfrog)
• approximately 1.45 miles

f.   Muley Point Road
• approximately 0.51 miles

g.   Johns Canyon Road (near Muley Point)
• approximately 7.49 miles

vii.   Add stricter quiet hours for the Lone Rock Beach Play Area.

2.   The Parties agree that NPS retains the discretion to decide whether it will adopt the proposals described in Paragraph 1 during the rulemaking process.

---

[3] "Lone Rock Play Area" is defined in 36 C.F.R. § 7.70(f)(3)(ii).
[4] A map depicting these GMP roads, and the approximately 8-mile segment of Poison Springs Loop, is attached to this Settlement Agreement as Attachment A.

4

3.      NPS agrees to install traffic counters at the Lone Rock Beach Play Area within two months of the execution of the Settlement Agreement.

4.      NPS agrees to provide explanation of its baseline decision, as it relates to NPS's National Environmental Policy Act analysis and its Non-Impairment Determination, as part of the new rulemaking process.

5.      Timing for New Rulemaking.

    A.      NPS will begin the rulemaking process described in Paragraph 1 by requesting that the Department of the Interior and the Office of Management and Budget add a regulatory action to the 2024 Spring Regulatory Agenda.  NPS will then publish the NPRM in the Federal Register for a 60-day public comment period, and publish a Revised Rule that will be effective 30 days after publication in the Federal Register.  NPS will publish a Revised Rule no later than January 10, 2025, subject to extensions by written agreement of the Parties for Good Cause.

    B.      "Good Cause" includes, but is not limited to, a lapse in governmental appropriations or delay during the Office of Management and Budget review as part of the administrative rulemaking process.

6.      Enforcement.

    A.      In the event NPS fails to publish a Revised Rule by January 10, 2025 (or a later date, if agreed to by the Parties pursuant to Paragraph 5(A)), a Party may file a motion requesting that the Court issue an order requiring NPS to publish the Revised Rule by a certain date, subject to an extension for Good Cause.  Before filing such a motion, the disputing Party must notify the other Parties of the nature of the dispute in writing.  The Parties shall attempt in good faith to resolve the dispute.  If the Parties do not resolve the dispute within 15 days of receiving written notice, a Party may file a motion.[5]

    B.      With regard to a motion filed under Paragraph 6(A), Plaintiffs agree that they will not seek a remedy of contempt for NPS's failure to publish a Revised Rule by January 10, 2025 (or a later date, if agreed to by the Parties pursuant to Paragraph 5(A)), and that their sole remedy will be to file a motion requesting an order of the Court requiring publication of the

---

[5] For purposes of this Settlement Agreement, a Party effectuates written notice by providing written notice to 1) the signatories to this Settlement Agreement, 2) the chief legal counsel for Plaintiff organizations; 3) the Office of the Solicitor, Regional Solicitor, Intermountain Region; and 4) Chief, Natural Resources Section, Environment and Natural Resources Division. The addresses for these entities is attached hereto as Attachment B.

Revised Rule by a certain date, subject to a further extension for Good Cause.  Plaintiffs reserve any rights they may have to seek relief for violations of any such order.

7.     In the course of the rulemaking described in Paragraph 1, NPS will comply with applicable law, including, but not limited to, 36 C.F.R. § 4.10 (incorporating E.O. 11644).

8.     Miscellaneous Provisions.

   A.     Until a new Revised Rule is effective, NPS will continue to manage ORV use according to the 2021 Rule and ORV Management Plan.

   B.     NPS will use the Superintendent's discretion under 36 C.F.R. 1.5 (for GMP roads) and 7.70(f)(6) (for routes and areas) to close or restrict uses to protect resources and minimize visitor conflict, subject to applicable limitations and procedural requirements for the use of such authorities.

   C.     Consistent with existing management plans and the 2021 Rule, NPS will continue to invest in signage and monitoring efforts to educate visitors and assist in enforcement.

9.     Plaintiffs' Commitments.

   A.     If the NPS's Revised Rule is consistent with the proposed revisions to the 2021 Rule described in Paragraph 1; does not designate new areas or routes, beyond those designated in the 2021 Rule; does not allow increased motor vehicle use, beyond the restrictions and limitations in the 2021 Rule; and NPS provides explanation of its baseline decision as limited to the unique facts of this rulemaking process, including prior unauthorized ORV use in Glen Canyon, Plaintiffs are precluded from challenging the Revised Rule, any of the NPS's final agency actions related to the Revised Rule, or the 2021 Rule.  This includes, but is not limited to, NPS's application of 36 C.F.R. § 4.10 (incorporating E.O. 11644) to only routes and areas, not GMP roads.

   B.     If NPS's Revised Rule is not consistent with the proposed revisions to the 2021 Rule described in Paragraph 1; designates new areas or routes, beyond those designated in the 2021 Rule; allows increased motor vehicle use, beyond the restrictions and limitations in the 2021 Rule; or NPS does not provide explanation of its baseline decision as limited to the unique facts of this rulemaking process, including prior unauthorized ORV use in Glen Canyon, Plaintiffs may challenge the Revised Rule, any of the NPS's final agency actions related to the Revised Rule, or, to the extent the Revised Rule does not entirely supersede the 2021 Rule with respect to the Lone Rock Beach Play Area as delineated in 36 C.F.R. § 7.70(f)(3)(ii),

6

Plaintiffs may only challenge that portion of the 2021 Rule that designates ORV use in the Lone Rock Beach Play Area as delineated in 36 C.F.R. § 7.70(f)(3)(ii).  Plaintiffs may not challenge any other portion of the 2021 Rule.  Plaintiffs may bring such challenges in the U.S. District Court for the District of Columbia.  The United States agrees not to object to the designation of a new complaint challenging the Revised Rule as a related case under LCvR 40.5(a)(4) and not to move to transfer venue.

10.    Within 14 days of executing this Settlement Agreement, the Parties shall jointly move for voluntary dismissal of this litigation pursuant to Fed. R. Civ. P. 41(a)(2) ("Joint Dismissal Motion"), except that dismissal shall be without prejudice only as to challenges to the Lone Rock Beach Play Area, as set forth in Paragraph 9.B.  That Joint Dismissal Motion will request that the Court retain jurisdiction solely to enforce NPS's commitment to publish a Revised Rule in accordance with Paragraph 6. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *Keepseagle v. Vilsak*, 815 F.3d 28, 33-34 (D.C. Cir. 2016).  This Settlement Agreement will be effective if the Court grants that request and retains such jurisdiction.  If the Court does not grant the request to retain such jurisdiction, this Settlement Agreement will be rendered null and void.  The Parties shall include this Settlement Agreement as an Exhibit to their Joint Dismissal Motion, but will not ask the Court to approve the Settlement Agreement as a court order.

11.    The Parties shall each bear their own costs and attorneys' fees.

12.    This Settlement Agreement is the result of compromise and settlement, and does not constitute an admission, implied or otherwise, by Plaintiffs or Defendants to any fact, claim, or defense on any issue in this litigation.  No part of this Settlement Agreement shall have precedential value in any litigation or in representations before any court or forum or in any public setting.  The Agreement is executed for the purpose of settling Plaintiffs' respective Amended Complaints, and nothing herein shall be construed as precedent having preclusive effect in any other context.

13.    Nothing in this Settlement Agreement shall be interpreted as, or shall constitute, a requirement that Defendants are obligated to pay any funds exceeding those available or take any action in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable law.

14.    Nothing in this Settlement Agreement shall be construed to deprive a federal official of the authority to revise, amend or promulgate regulations, or to amend or revise land and resource management plans.

15.    Nothing in this Settlement Agreement shall be construed to waive any obligation to exhaust administrative remedies, to constitute an independent waiver of the United States' sovereign immunity, to change the standard of judicial review of

federal agency action under the Administrative Procedure Act, or to otherwise extend or grant this Court jurisdiction to hear any matter, except as expressly provided in Paragraph 6 of this Settlement Agreement.

16.    It is hereby expressly understood and agreed that this Settlement Agreement was jointly drafted by Plaintiffs and Defendants.  Accordingly, the Parties hereby agree that any and all rules of construction, to the effect that ambiguity is construed against the drafting Party, shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of the Settlement Agreement.

17.    This Settlement Agreement contains all of the agreements between Plaintiffs and Defendants, and is intended to be and is the final and sole agreement between the Parties concerning the complete and final resolution of Plaintiffs' claims. Plaintiffs and Defendants agree that any other prior or contemporaneous representations or understandings not explicitly contained in this Settlement Agreement, whether written or oral, are of no further legal or equitable force or effect.  Any subsequent modifications to this Settlement Agreement must be in writing, and must be signed and executed by all Parties to this Settlement Agreement.

18.    This Settlement Agreement represents the entirety of the undersigned Parties' commitments with regard to settlement.

19.    This Settlement Agreement only applies to the rulemaking described in Paragraph 1, and does not apply to any other NPS rulemakings.

20.    The undersigned representatives of the Plaintiffs and Defendants certify that they are fully authorized by the respective Parties whom they represent to enter into the terms and conditions of this Settlement Agreement and to legally bind such Parties to it.  The Settlement Agreement is binding on Plaintiffs and Defendants once signed by the Parties.

Dated: March 26, 2024

IT IS SO STIPULATED.

TODD KIM
ASSISTANT ATTORNEY GENERAL

JEFFREY    Digitally signed by JEFFREY
CANDRIAN  CANDRIAN
          Date: 2024.03.26 09:36:33 -06'00'
/s/
Jeffrey N. Candrian (CO Bar No. 43839)
Trial Attorney
U.S. Department of Justice

8

Environment and Natural Resources
Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1382
E-mail: jeffrey.candrian@usdoj.gov

Mark J. Widerschein (Ohio Bar No. 100162)
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources
Division
Natural Resources Section
150 M St. NE
Washington, D.C.
Tel: (202) 532-5803
E-mail: mark.widerschein@usdoj.gov

*Counsel for Federal Defendants*

/s/    Stephen Bloch    Digitally signed by
                        Stephen Bloch
                        Date: 2024.03.26 10:56:14
                        -06'00'

Stephen Bloch (*pro hac vice*)
Hanna Larsen (*pro hac vice*)
Laura Peterson (*pro hac vice*)
SOUTHERN UTAH WILDERNESS
ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
Tel.: (801) 486-3161
Fax: (801) 486-4233
E-mail: steve@suwa.org
E-mail: hanna@suwa.org
Email: laura@suwa.org

William Eubanks (D.C. Bar No. 987036)
EUBANKS & ASSOCIATES, PLLC
1629 K Street NW, Suite 300
Washington, D.C. 20006
Tel.: (970) 703-6060
E-mail: bill@eubankslegal.com

*Counsel for Plaintiff Southern Utah
Wilderness Alliance*

9

/s/
Kolya D. Glick (D.C. Bar No. 1015074)
Jonathan S. Martel (D.C. Bar No. 428135)
Samuel I. Ferenc (D.C. Bar. No. 1616595)
Charles Birkel (D.C. Bar No. 90000646)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel.: (202) 942-5862
Fax: (202) 942-5999
E-mail: kolya.glick@arnoldporter.com
E-mail: jonathan.martel@arnoldporter.com

*Counsel for Plaintiff National Parks
Conservation Association*